**DISTRICT COURT, BOULDER COUNTY,**
**STATE OF COLORADO**

**Court Address:**
**1777 Sixth Street**
**Boulder, CO    80302**
_____

DOUGLAS BROWN;

Plaintiff:

v.

FEDERAL INSURANCE COMPANY and
GALLAGHER BASSET SERVICES, INC.

Defendants.
_____

Attorneys for Plaintiff:
John G. Taussig, III, 13496
Scott D. Smith, #35009
Taussig & Smith, P.C.
5377 Manhattan Circle, Ste. 203
Boulder, CO 80303-4345
Phone No.: (303) 443-2700
Fax No.:     (303) 448-9600
e-mail: jt@taussigsmith.com; scott@taussigsmith.com

DATE FILED: October 20, 2017 4:20 PM
FILING ID: E925FEFF29098
CASE NUMBER: 2017CV31033

▲ COURT USE ONLY ▲
_____

Case No.

Division

**COMPLAINT AND JURY DEMAND**

Plaintiff, by and through his attorneys, Taussig & Smith, P.C., for his Complaint and Jury Demand against Defendants respectfully states and alleges as follows:

**PARTIES**

1.      At all times relevant to this action, Plaintiff Douglas Brown is and was a resident of the state of Colorado.

2.      At all times relevant to this action, Defendant Federal Insurance Company (hereinafter "Federal") is and was a foreign insurance company, doing business in the state of Colorado, and is a non-resident of the state of Colorado.

3.      At all times relevant times to this Complaint, Defendant Gallagher Basset Services Inc. (hereinafter "GB") is and was a foreign corporation, doing business in the state of

Colorado, and is a non-resident of the state of Colorado.

## **GENERAL ALLEGATIONS**

3.   Venue is proper in this Court pursuant to C.R.C.P. 98(c).

4.   The Courts of the State of Colorado have jurisdiction over the parties and the subject matter of this Complaint.

5.   At all times relevant hereto, Defendants were subject to the following insurance industry standards:

   a.   Defendants must proactively investigate a Claimant's worker's compensation claim.

   b.   Defendants must objectively consider all evidence available to it after conducting a thorough investigation and decide claims based on applicable law.

   c.   Defendants must assist Claimants with the worker's compensation claims it adjusts.

   d.   Defendants must be honest with Claimants about their workers compensation claims.

   e.   In adjusting claims, Defendants must equally seek information that supports increasing and decreasing the value of a Claimant's claim.

   f.   Defendants must not conduct a biased one-sided investigation of a worker's compensation claim.

   g.   Defendants has a duty to be fair to Claimants in the handling of their claims at all times.

   h.   Defendants may not deny or under-pay a worker's compensation claim based solely on a guess or speculation.

   i.   Defendants cannot encourage its claims handling personnel to pay as little as possible on worker's compensation claims.

   j.   It would be wrong for Defendants to encourage its claims personnel to underpay claims.

   k.   Defendants must pay any amounts it has determined to be recoverable as part of its duty to assist with the processing of a worker's compensation claim.

2

    o. Defendants should continue to evaluate and investigate all facts of a worker's compensation claim even if a hearing application is filed by a Claimant against Defendant.

    p. Everything that happens regarding a worker's compensation claim should be reflected in Defendants' claim notes.

    q. Defendants must not rely on a biased expert if it has reason to know of the bias.

    r. Defendants should not in any manner tie any claim personnel compensation with insurer or Third Party Administrator profitability based on delay or denial of claims.

    s. Defendants should not use its claims department as a profit center.

6. On June 25, 2015, Plaintiff was injured in the course and scope of his employment when he was lifting a 3 foot by 5 foot wooden pallet off of the floor to place onto a table.

7. When the pallet was approximately waist high, Plaintiff twisted his body and arms, and felt a pop in his shoulder and immediate pain in the center of his left bicep and into his left shoulder.

8. Plaintiff dropped the pallet as a result of the pain, and a nearby co-worker turned around when he heard the pallet fall.

9. The incident was reported almost immediately.

10. At the time of the incident, Plaintiff had worked for his employer for approximately 20 years.

11. At no time prior to June 25, 2015, had Plaintiff ever had a worker's compensation claim with Defendants for his left shoulder, ever had a personal injury claim for his left shoulder, or ever had a significant injury to his left shoulder.

12. At all times relevant to this Complaint, Defendant Federal Insurance Company provided the workers compensation policy applicable to Plaintiff's workers compensation claim.

13. As the insurer of Plaintiff's worker's compensation claim, Defendant Federal Insurance Company had a non-delegable duty to ensure that the claim was handled in good faith and with fair dealing.

14. On June 25, 2015, following report of the incident by Plaintiff, a worker's compensation claim was initiated with Defendants.

15. Plaintiff was then directed to seek treatment from the healthcare providers at CCOM.

16. Upon arrival at CCOM, Plaintiff was noted to be experiencing pain in his left shoulder and biceps and was diagnosed with a left upper arm and shoulder strain and left biceps strain with biceps tendinitis.

17. It was noted by Plaintiff's healthcare provider, Joseph Mullen, PA-C, that "[t]he cause of this problem is related to work activities" and that Plaintiff has "had no previous injury to the left shoulder or arm".

18. Plaintiff was then placed on work restrictions and recommended to undergo a series of conservative treatment modalities.

19. Shortly after the claim was initiated, Defendant GB contacted Plaintiff's employer, and asked if there was any reason that they questioned the claim.    Defendant's employer stated No.

20. Following the initial visit with CCOM, he was recommended to undergo a MRI and referred for a consultation with an orthopedist, Geoffrey Doner, M.D.

21. The MRI showed evidence of preexisting degenerative changes in Plaintiff's shoulder.

22. Plaintiff was 60 years old at the time of his MRI, and degenerative changes on MRI studies are common among individuals of Plaintiff's age.

23. Upon visiting Dr. Doner, he examined Plaintiff and reviewed his MRI, diagnosing him with left shoulder pain, disorder of the left biceps tendon, and a partial thickness rotator cuff tear.

24. As with PA Mullen, Dr. Doner indicated that Plaintiff's symptoms stemmed from his work related injury.

25. On October 23, 2015, with conservative treatment modalities exhausted and Plaintiff continuing to experience symptoms, he was scheduled to undergo surgery on his left shoulder and biceps to cure and relieve his work related injury.

26. Upon receiving word of the pending surgery, Defendants escalated the claim and denied it.

27. The denial of Plaintiff's claim was without a reasonable basis.

28. In the months since the claim was accepted, no new information had been obtained that justified denial of the claim.   The only thing that had changed was that Plaintiff was still seeking treatment and was now being recommended to undergo surgery.

29. As a result of Defendants' unreasonable denial, Plaintiff was forced to retain an attorney for his worker's compensation claim and file an Application for Hearing to obtain his worker's compensation benefits.

4

30.     The decision to deny Plaintiff's claim and compel him to litigate to obtain his worker's compensation benefits was without a reasonable basis.

31.     Following the Application for Hearing, Defendants scheduled an examination with a retained physician, Dr. Lawrence Lesnak.

32.     There was no reason to rely on a retained medical consultant on this claim.

33.     Defendants' selected healthcare providers, Dr. Doner and PA Mullen, Plaintiff, Plaintiff's co-workers, Plaintiff's primary care physician and others were all available to Defendants to definitively answer any questions they might have as to the cause or severity of Mr. Brown's injuries, and any prior issues with Plaintiff's left shoulder.

34.     Dr. Lesnak is known by Defendants to provide reports favorable to Defendants' position in contested workers compensation claims.

35.     Dr. Lesnak is a biased physician who insurers and administrators (like Defendants) seek out to perform exams and write record reviews to support denying claims and denying workers' compensation benefits. He is someone insurers and administrators know they can count on to help support decisions to deny claims and deny benefits.

36.     Defendants knew when they requested an examination from Dr. Lesnak that he would not provide fair and objective opinions, but instead would say whatever was necessary to help Defendants deny, delay or reduce the value of Plaintiff's workers compensation claim.

37.     Upon information and belief, Defendants knew that it could rely on Dr. Lesnak because his prior retained medical examination and record review reports almost universally help insurers and administrators like Defendants deny, delay or reduce the value of insurance claims.

38.     Defendants participated in a scheme that was designed to thwart Mr. Brown's claim. Their intent all along was to ignore the body of evidence that when objectively investigated and evaluated could only result in concluding Mr. Brown's claim should be evaluated to include his entire claim for left shoulder. Defendants knew when they were participating in this scheme that it was disingenuous, but were so intent on saving money that they ignored the evidence, the reasonable inferences from the evidence, common sense and the truth.

39.     Defendants hoped the report of Dr. Lesnak would put pressure on Plaintiff to accept less on his claim.

40.     At the hearing on Plaintiff's benefits, the Administrative Law Judge quickly dispatched with Defendants' arguments, ruling that Plaintiff's claim was compensable, and ordering Defendants to admit the claim and authorize Dr. Doner's recommended surgery.

5

41.     Prior to the ALJ's order, on May 4, 2016, Plaintiff was terminated from his employment.

42.     At the time of his termination, the employer's reason was that with Plaintiff's work restrictions, they were unable to provide him with work, and Plaintiff's treating healthcare providers could not modify his work restrictions until Plaintiff was able to undergo the shoulder surgery Defendants were denying.

43.     Because of the ALJ's order, when Defendants were required to file a General Admission of Liability, they were also required to admit for and pay Plaintiff his lost earnings (i.e. Temporary Total Disability or "TTD") benefits.

44.     Instead, Defendants filed a General Admission of Liability for medical benefits only.

45.     As a result of Defendants' actions, Plaintiff was again compelled unnecessarily to litigate the entitlement to his workers compensation benefits.

46.     Defendants' denial of Plaintiff's TTD benefits was without a reasonable basis.

47.     At all times relevant to Plaintiff's Complaint, Defendant GB was an administrator of Plaintiff's workers compensation benefits on behalf of Defendant Federal.

48.     As an administrator of worker's compensation benefits, Defendant GB is charged with knowing and administering workers compensation benefits consistent with the State of Colorado Division of Workers' Compensation Guidelines and Colorado law.

49.     As the insurer on Plaintiff's claim, Defendant Federal is charged with knowing and ensuring that Plaintiff's worker's compensation benefits are administered consistent with its duty of good faith and fair dealing, the State of Colorado Division of Workers' Compensation Guidelines and Colorado law.

50.     In Plaintiff's case, Defendants ignored those guidelines as well as their obligation under the law.

51.     Defendant GB has a financial interest in delaying and denying workers compensation benefits to individual workers compensation Claimants like the Plaintiff.

52.     Defendant GB charges a flat fee regardless of the outcome of the claim, which incentivizes it to deny claims.   Denied claims require less work than an admitted claim that requires administration of benefits.

53.     GB charges more for litigated claims, so it is incentivized to turn the investigation over to an attorney which is both a violation of its non-delegable duties as described above and below, but also results in someone whose duties are inconsistent with GB's duties to the Plaintiff making decisions.

6

54. As the insurer on Plaintiff's claim, Defendant Federal has a financial interest in delaying and denying worker's compensation benefits to individual worker's compensation claimants like Plaintiff.

55. Upon information and belief, Defendant Federal sought out Defendant GB's services in the hope that Defendant GB would reduce the amount it would have to pay in worker's compensation benefits to claimants like Plaintiff.

56. The healthcare providers at CCOM were selected by Defendants to treat Plaintiff for his injuries. Nonetheless, they viewed their treatment recommendations and the treatment of their referring physicians with skepticism.

57. Although some treatments were subsequently authorized, Defendants' denials unnecessarily delayed Plaintiff's workers compensation claim and caused him to sustain increased and unnecessary pain and suffering, worsened Plaintiff's physical condition, and caused him increased physical impairment.

58. The purpose of the Colorado Workers' Compensation Act is to "assure the quick and efficient delivery of disability and medical benefits to injured workers-- at a reasonable cost to the employers, without the necessity of any litigation…" C.R.S. § 8-40-102(1).

59. C.R.S. § 8-41-301(1) provides that "the right to the compensation provided for in articles 40 to 47 of this title, in lieu of any other liability to any person for any personal injury or death resulting therefrom, shall obtain in all cases where the following conditions occur: (a) Where, at the time of the injury, both employer and employee are subject to the provisions of said articles and where the employer has complied with the provisions thereof regarding insurance; (b) Where, at the time of the injury, the employee is performing service arising out of and in the course of the employee's employment; (c) Where the injury or death is proximately caused by an injury or occupational disease arising out of and in the course of the employee's employment and is not intentionally self-inflicted."

60. CRS § 8-42-101(1)(a) reads: Every employer, regardless of said employer's method of insurance, shall furnish such medical, surgical, dental, nursing, and hospital treatment, medical, hospital, and surgical supplies, crutches, and apparatus as may reasonably be needed at the time of the injury or occupational disease and thereafter during the disability to cure and relieve the employee from the effects of the injury.

61. Defendants violated all of these statutes and others.

62. Defendants' conduct in this case directly conflicts with the purpose of the Colorado Worker's Compensation Act.

63. At no time was there ever a reasonable basis to support a conclusion that Plaintiff's injuries were not work-related or that the recommendations of Plaintiff's physicians were not

reasonable and necessary.

64. Defendants have never had a reasonable basis to deny any medical treatment nor payment of indemnity benefits.

65. Defendants failed to properly investigate and adjust Plaintiff's workers compensation claim.   As a result, Plaintiff's workers compensation benefits were improperly delayed and/or denied.

66. Defendants wrongfully delayed and/or failed to pay for Plaintiff's medical treatment when due and/or wrongfully terminated and/or delayed and/or denied medical treatment for Plaintiff and/or wrongfully failed to pay his indemnity benefits.

67. Defendants failed in their duties to Plaintiff under the Workers Compensation Act and Colorado common law.

68. At all times, Defendants acted willfully and wantonly, intentionally seeking outcomes that conflict with the purpose of the Workers' Compensation Act and in seeking outcomes that benefitted it, and not Plaintiff.

## FIRST CLAIM FOR RELIEF
### (Breach of the Duty of Good Faith and Fair Dealing)

69. Plaintiff incorporates by reference herein the allegations set forth in the paragraphs above.

70. Plaintiff was injured while in the course and scope of his employment.

71. At the time of Plaintiff's injury, Defendants were required by Colorado law to pay workers' compensation benefits to Plaintiff.

72. Plaintiff has sustained injuries, damages and losses proximately caused by Defendants' unreasonable, bad faith conduct.

73. Defendants acted unreasonably in delaying and/or denying workers compensation benefits to Plaintiff in violation of the Colorado Workers Compensation Act, statutes and common law of the State of Colorado.

74. Defendants knew that their conduct was and is unreasonable and/or recklessly disregarded the fact that their conduct was unreasonable.

75. Defendants have a duty to provide benefits to Plaintiff as defined in the Workers Compensation Act and per Colorado Law.   Defendants have breached this duty.

76. Defendants willfully violated the duties set forth in C.R.S. 10-3-1113.

77.     Defendants have willfully and with such a frequency as to indicate a business practice, violated the duties set forth in C.R.S. 10-3-1104(1)(h), including, but not limited to:

    i.   *(II) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;*

    ii.  *(III) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;*

    iii. *(IV) Refusing to pay claims without conducting a reasonable investigation based upon all available information;*

    iv.  *(V) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed;*

    v.   *(VI) Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear;*

    vi.  *(VII) Compelling Plaintiff to institute litigation to recover amounts due;*

    vii. *(XIV) Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement;*

    viii. *Defendants also willfully violated CRS 10-3-1104(1)(hh): Basing the compensation of claims employees or contracted claims personnel, including compensation in the form of performance bonuses or incentives, on any of the following:*
        1. *(I) The number of policies canceled;*
        2. *(II) The number of times coverage is denied;*
        3. *(III) The use of a quota limiting or restricting the number or volume of claims; or*
        4. *(IV) The use of an arbitrary quota or cap limiting or restricting the amount of claims payments without due consideration of the merits of the claim;*

78.     Defendants also willfully violated CRS 10-3-1104(1)(ii) by violating CRS 8-43-401.5.

79.     As a direct and proximate result of Defendants' bad faith conduct, Plaintiff has suffered, and continues to suffer, injuries, damages and losses.

## SECOND CLAIM FOR RELIEF
### [Aiding and Abetting – Against All Defendants]

80.     Plaintiff incorporates all of the above allegations.

81.    Defendants Federal and GB violated the Workers' Compensation Act and their duty of good faith and fair dealing in the handling of Plaintiff's worker's compensation claim as set forth above.

82.    Defendants Federal and GB were generally aware that they were assisting one another in performing tortious activity at the time of Plaintiff's workers' compensation claim; including efforts to deny the claim, to defend the unreasonable denial of the claim and to delay and deny treatment. Defendants GB and Federal knowingly participated in the bad faith handling of Plaintiff's workers' compensation claim.

83.    Defendant GB's and Federal's participation in the tortious handling of Plaintiff's workers' compensation claim was substantial.

84.    Plaintiff has suffered injuries and damages from the actions alleged herein.

### THIRD CLAIM FOR RELIEF
**[Civil Conspiracy – Against All Defendants]**

85.    Plaintiff incorporates all of the above allegations.

86.    The Defendants agreed through their words or conduct, to unlawfully prevent Plaintiff from obtaining the workers' compensation benefits he was entitled to receive and to thwart the purposes of the Workers' Compensation Act; all through unlawful means.

87.    Defendants also conspired to violate Defendant Federal's and GB's duty of good faith and fair dealing to Plaintiff. The conspiracy was to delay and deny, unreasonably, Plaintiff's benefits.

88.    The Plaintiff has injuries, damages, and losses resulting from this civil conspiracy.

89.    The Plaintiff's injuries damages and losses were caused by the acts of the Defendants to accomplish the goal of preventing Plaintiff from lawfully obtaining the insurance benefits he needed.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendants for:

A.    Non-economic damages incurred to the present time, or which will probably be incurred in the future, including, but not limited to, pain and suffering, inconvenience, emotional stress, and impairment of quality of life;

B.    Economic losses incurred to the present time, or which will probably be incurred in the future, including, but not limited to, loss of earning or impairment of earning capacity, future medical treatment, and other expenses;

C.      Physical impairment and disfigurement;

D.      Pre-judgment and post-judgment interest, costs, expert witness fees, and any other relief to which Plaintiff is entitled;

E.      Interest pursuant to C.R.S. § 5-12-102;

F.      Compensatory damages that Plaintiff is entitled to for bad faith, emotional distress, and any unpaid Workers' Compensation benefits;

G.      Accelerated future benefits; and

H.      While Plaintiff is prohibited from claiming exemplary damages in his Complaint, Defendants are put on notice that their conduct was willful and wanton and otherwise entitles Plaintiff to make a claim for exemplary damages. At some point before the case goes to a jury, Plaintiff intends to ask the Court that his claim for exemplary damages is added.

**PLAINTIFF DEMANDS TRIAL BY JURY ON ALL ISSUES**

Plaintiff reserves the right to move to add other claims and to seek exemplary damages pursuant to § 13-21-102, C.R.S.

Respectfully submitted this 20th day of October, 2017.

/s/____*Scott D. Smith*_____
John G. Taussig III      # 13496
Scott D. Smith, # 35009
Taussig & Smith, PC
5377 Manhattan Circle, Suite 203
Boulder, CO 80303
**ATTORNEYS FOR PLAINTIFF**

Plaintiff's Address:
605 Swope Avenue
Colorado Springs, CO 80909